STELLE (McLAUGHLIN v.). See Case No. 8,873.

STELLMAN (DAY v.). See Case No. 3,690.

## Case No. 13,359.
STELLWAGEN v. LIFE ASS'N OF AMERICA.

[14 Blatchf. 349.] [1]

Circuit Court, N. D. New York. Nov. 12, 1877.

NEW TRIAL—SURPRISE—EVIDENCE TO BE PRODUCED.

When a motion for a new trial on the ground of surprise is made, because witnesses have failed to testify as they represented, before the trial, they would testify, the question is, whether the evidence to be produced on another trial is such as will probably secure a different result.

[This was an action on an insurance policy by Magdalena Stellwagen against the Life Association of America. Heard on motion for a new trial.]

Delavan F. Clark, for plaintiff.
Benjamin H. Austin, for defendant.

WALLACE, District Judge. Witnesses for the defendant, having represented to the defendant's attorney that they were cognizant of material facts for the defence, were subpœnaed by the defendant, and, on the trial, denied all knowledge of the facts, under circumstances which justify a strong inference that they committed perjury. The defendant now moves for a new trial, on the ground of surprise; and the only question I deem it material to consider is, whether the evidence which it appears the defendant can produce upon another trial is such as will probably secure a different result from that of the former trial, for, unless such is the case, the motion should be denied.

The action is on policies of insurance upon the life of John Stellwagen. The defence, so far as it is now in question, is based upon a breach of warranty as to facts set forth in the application for insurance, and upon fraudulent concealment; and, within the present issues, the evidence should be such as to authorize the

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

jury to find that some of the parents or brothers of John Stellwagen had been afflicted with pulmonary or other diseases, hereditary in their nature, to the knowledge of John Stellwagen, or that there were no material facts except those which had already been answered in the application, respecting the physical or mental condition of John Stellwagen, or his personal or family history, of which the officers of the defendant ought to be informed, or that the cause of the death of the brother of John Stellwagen was fraudulently concealed. Concisely stated, if the evidence which, it appears, the defendant can produce upon a new trial, would authorize the jury to find that Daniel Stellwagen, the brother of the insured, had been afflicted with insanity, or committed suicide while insane, and that the insured had knowledge of the fact, there should be a new trial; otherwise, not.

The testimony on the former trial together with that which the affidavits show the defendant can obtain, is sufficient to authorize a jury to find that Daniel Stellwagen was insane, but, I am of opinion, is insufficient to support a finding that John Stellwagen had knowledge of his brother's insanity. The substance of the evidence, disregarding that which is merely hearsay, is an entry in the records of the Erie county poor-house, made in the year 1850, showing the commitment of Daniel Stellwagen as an insane pauper, the finding of a coroner's jury, to the effect that Daniel Stellwagen "came to his death by committing suicide, or accidentally falling while laboring under a mental derangement of mind," and the testimony of three witnesses, who worked with Daniel for several months, shortly prior to his death, and who detail the acts upon which they predicate their opinion of his insanity.

The incompetent evidence bearing on this question is to be laid out of the case. Neither the verdict of the jury at the coroner's inquest, nor the entries in the books of the poor-house, can be proved, without evidence showing that they had been brought to John's attention before he applied to be insured; and all that remains is inadmissible, because hearsay, except that which relates to the conduct of Daniel, upon which the witnesses base their opinion of his insanity. This conduct, as described in the affidavits, is not marked by any decisive symptoms of insanity, and, if it should be assumed that John had observed it, of which there is no proof, is as consistent with other theories of the moving cause as with that of insanity. Excluding from consideration Daniel's death by insane suicide, and his confinement as an insane person, the remaining facts which are capable of proof by competent testimony, would not authorize a jury to find a fraudulent suppression in the application, or that John knew his brother had been afflicted with a hereditary disease. It is to be observed, that all the acts upon which insanity is predicated, occurred over twenty years prior to the application for the insurance; that no admissions of John

as to any knowledge regarding Daniel's physical or mental condition are proffered; that none of the witnesses speak of any conduct of Daniel when John was present; and that the conduct upon which they base their opinions of insanity, though consistent with that theory, is not inconsistent with other deductions. While the relationship between John and Daniel, and the fact that they lived in the same city, afford strong moral evidence that John knew of his brother's insanity, if it existed, it is not legal evidence, in the absence of any proof of intimacy between them. The brother who survives the insured, who had equal facilities for information with John, testified, on the former trial, that he had never heard that Daniel was insane. The burden of proof is on the defendant, to show John's knowledge of his brother's insanity, and this cannot be proved by speculation or conjecture.

I attach but little importance to the defence predicated on the statement, in response to a question in the application, that no material facts respecting the family history of the insured existed, of which the officers of the defendant ought to be informed. Information had already been given, by the answers to the questions in the application, of every conceivable fact about which the officers of the defendant deemed it necessary to inquire. If the information was correct, the question was a mere drag-net, for the purpose of procuring some technical defence to the policy; if not correct, the defendant had the means to avail itself of substantial and meritorious defences.

In conclusion, while it can hardly be claimed that the defences arising from the breach of warranty can be maintained with any practical chances of success, the evidence in support of them is not sufficient, considered in its theoretical importance upon the result of a new trial, to justify the granting of the motion. A new trial is, therefore, denied.